Receipt number AUSFCC-11467599

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DESIGN BUILD LLC** | |
| **Plaintiff,** | Case No.: 26-1361 C |
| **v.** | |
| **THE UNITED STATES OF AMERICA** | Judge: ________________ |
| **Defendant.** | |

## COMPLAINT

Plaintiff Design Build, LLC ("DBLLC"), by and through its undersigned counsel, brings this action against the United States of America under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101–7109, to appeal two Contracting Officer's Final Decisions ("COFDs") denying three certified claims arising from the performance of Contract No. W912EP21C0010 for the Fort Buchanan Family Housing Replacement project, Fort Buchanan, Puerto Rico.

## NATURE OF THE ACTION

1. This action arises from a pattern of conduct in which the United States Army Corps of Engineers ("USACE") furnished defective and internally inconsistent design specifications, took extended periods to resolve discrepancies identified by DBLLC, directed changes that disrupted construction sequencing, issued improper and unwarranted stop-work orders for minor alleged workmanship issues, and then refused to compensate DBLLC for the resulting delays and increased costs.

2. DBLLC seeks recovery on three certified claims: Claim 0002, seeking $1,309,979.14 in delay damages caused by defective window and door thermal-performance specifications; Claim 0003, seeking $2,450,386.87 in delay damages caused by defective CMU wall bent-plate connection specifications, a stop-work order, and the government's delayed

issuance of corrective drawings; and Claim 0004, seeking $654,844.76 in delay damages for the additional time required to complete CMU walls under the government's revised design.

3. Together, DBLLC's claims seek approximately $4.4 million in delay damages plus associated time extensions to the contract completion date, with CDA interest running from the date of each claim's submission to the Contracting Officer.

## PARTIES

4. Plaintiff Design Build, LLC, is a limited liability company organized and existing under the laws of Puerto Rico, with its principal place of business in Puerto Rico. DBLLC is the prime contractor for the Fort Buchanan Family Housing Replacement project under Contract No. W912EP21C0010.

5. Defendant is the United States of America, acting through the United States Army Corps of Engineers, the federal agency responsible for administering the Contract at issue.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under the Contract Disputes Act, 41 U.S.C. § 7104(b)(1), and the Tucker Act, 28 U.S.C. § 1491(a)(2), which grant the United States Court of Federal Claims jurisdiction over claims by contractors against the United States relating to contracts with the federal government.

7. DBLLC submitted its claims to the Contracting Officer in writing, certified each claim as required by 41 U.S.C. § 7103(b) and FAR 52.233-1, and received Contracting Officer's Final Decisions denying the claims. DBLLC now brings this action within the twelve-month limitations period prescribed by 41 U.S.C. § 7104(b)(1).

8. The Contracting Officer issued the COFD denying Claim 0002 on September 18, 2025. This Complaint is filed within twelve months of DBLLC's receipt of that decision.

9. On July 8, 2026, the government issued letter AFHC-C-0244, which constituted the COFD on Claims 0003 and 0004. This Complaint is filed within twelve months of DBLLC's receipt of that decision.

10. Venue is proper in this Court under 28 U.S.C. § 1491(a)(2).

## THE CONTRACT

11. On or about September 24, 2021, the United States, acting through USACE, awarded Contract No. W912EP21C0010 to DBLLC for the construction of family housing replacement units at Fort Buchanan, Puerto Rico (the "Contract").

12. The Contract is a firm-fixed-price construction contract and incorporates, among other provisions, the Federal Acquisition Regulation ("FAR") clauses applicable to fixed-price construction contracts, including without limitation: FAR 52.233-1 (Disputes); FAR 52.243-4 (Changes); FAR 52.242-14 (Suspension of Work); and FAR 52.236-2 (Differing Site Conditions).

13. The contract also incorporates FAR 52.233-4 (Applicable Law for Breach of Contract Claim), which states that United States law will apply to resolve any claim of breach of this contract.

14. The Contract required DBLLC to construct residential housing units in accordance with government-furnished design specifications and drawings. The government retained responsibility for the adequacy of its design specifications under the implied warranty recognized in *United States v. Spearin*, 248 U.S. 132 (1918), and its progeny.

## FACTUAL BACKGROUND

### A. Claim 0002: Window and Door Specification Changes

15. The Contract specifications originally required windows and doors to meet a thermal-performance U-factor of 0.40. USACE issued Request for Proposal No. 0002 ("RFP-0002"), which revised the U-factor requirement downward from 0.40 to 0.30, a change that made

fabrication of compliant aluminum windows commercially impossible given the simultaneous impact-resistance requirements established by the Contract.

16. The combined thermal-performance requirement (U-factor of 0.30) and impact-resistance requirements imposed by the specifications could not simultaneously be met with commercially available products.

17. USACE subsequently removed the 0.30 U-factor revision and, on April 23, 2023, granted DBLLC a thermal-performance variance allowing U-factors up to 0.53. This variance effectively acknowledged that the prior specification was unachievable.

18. On March 13, 2023, DBLLC transmitted window submittals proposing U-factors up to 0.53, as authorized by USACE's April 23, 2023, variance approval. The government's review process for these submittals extended over multiple months while DBLLC's window and door procurement remained on hold.

19. On June 8, 2023, DBLLC submitted REA-001 to the Contracting Officer seeking $473,725.21 in material cost increases and a 169-calendar-day time extension for delays caused by the specification changes and the government's unreasonably extended review process.

20. On or about October 6, 2023, the Administrative Contracting Officer ("ACO") acknowledged that the specification issues caused schedule impacts and granted 169 excusable days. The ACO's determination that schedule impacts resulted from the thermal-performance requirements supports causation for DBLLC's delay damages.

21. Modification A00014 to the Contract, executed thereafter, granted DBLLC 162 excusable, non-compensable days. The modification stated that the time extension was a "complete equitable adjustment for the time extension portion" and "released the government from

further equitable adjustments attributable to the facts and circumstances of REA-001," but expressly reserved DBLLC's "right to submit the alleged contract increase portion."

22. In accordance with DBLLC's express reservation of rights, on June 19, 2025, DBLLC submitted amended Claim 002 as a certified claim under FAR 52.233-1, seeking $1,309,979.14 in delay damages—including extended field-office overhead and home-office overhead—attributable to the 169 days of excusable delay caused by the government's specification changes. DBLLC certified the claim as required by 41 U.S.C. § 7103(b).

23. The Contracting Officer issued the COFD for Claim 0002 on September 18, 2025. The COFD improperly and erroneously denied Claim 002 primarily on the grounds that the release in Modification A00014 constituted a complete bar to recovery.

24. Additionally, the government's use of the Default Clause to characterize the 169 days as "excusable but non-compensable" is inconsistent with FAR 52.249-10. The government previously acknowledged the delay was government-caused through defective specifications and directed changes—not an "unforeseeable cause beyond the control" of the contractor. When the government itself causes delay through design defects, the Changes clause (FAR 52.243-4)—not the Default clause—is the proper vehicle, and compensation is required.

25. The government knew or should have known that its specifications were defective and that its extended review process was delaying DBLLC's procurement of windows and doors.

**B. CMU Wall System Design Defects and Delays**

26. The CMU wall system issues underlying Claims 0003 and 0004 arose from the design and construction of the concrete masonry unit ("CMU") wall system specified in the Contract. The Contract drawings originally required CMU walls to be connected to roof beams through steel bent plates.

27. On September 10, 2023, DBLLC submitted Request for Information No. 0058 ("RFI-0058") to the government after identifying constructability and compatibility concerns between the specified bent-plate connection detail and the exterior wall finish assembly. Specifically, DBLLC identified 11 drawing sheets that contained contradictory construction details regarding the bent-plate configuration and the Direct Applied Finish System ("DAFS").

28. The government took 46 days to respond to RFI-0058. During that period, while USACE evaluated a design concern requiring government direction, DBLLC continued taking reasonable steps toward performance, including coordinating with suppliers, investigating constructability issues, developing alternative solutions, and preparing submittals and other project deliverables. On October 24, 2023—two days before the government's response—DBLLC submitted an alternative design approach addressing the identified conflicts. On October 26, 2023, the government directed DBLLC to proceed with the original bent-plate design, characterizing the discrepancies across 11 drawing sheets as mere "typographical errors" despite the scope of the inconsistency.

29. During and after the 46-day response period, DBLLC did not remain idle or simply wait for the government to resolve the design conflict. Rather than committing the bent plates to fabrication while constructability and system-compatibility issues remained unresolved, DBLLC continued active project performance by submitting RFIs, submittals, and other project deliverables; investigating the conflicts between the bent-plate connection and the wall finish assembly; coordinating with suppliers and manufacturers regarding fabrication and finish compatibility; developing alternative design approaches; and seeking USACE direction. These efforts were directed toward responsible performance and led to the identification of an additional

incompatibility between the bent plates and the specified DAFS exterior finish system, which required further government resolution before fabrication could responsibly proceed.

30. On November 22, 2023, DBLLC submitted RFI-0063 identifying that the DAFS exterior wall finish could not be installed over the specified bent-plate connection as shown in the drawings. DBLLC attached supplier information identifying tested substrates, proposed attaching an approved substrate or mechanically attached EPS to the metal, and requested direction on how to proceed and a detail for the final wall composition. DBLLC's actions further demonstrated that the government's drawings were internally inconsistent and that fabrication and installation could not responsibly proceed without further resolution.

31. On December 21, 2023, the government directed DBLLC to proceed with bent-plate procurement while the government developed a solution to the DAFS conflict. The government indicated that costs would be borne by the government if bent plates were ultimately eliminated from the design.

32. On or about May 22, 2024, the government issued a stop-work order on CMU wall construction. The stop-work order remained in effect until July 11, 2024 -- a period of approximately 49 days.

33. The workmanship concerns cited by the government as the basis for the stop-work order were minor, readily addressable through standard construction practices, and did not warrant demolition, reconstruction, or an extended work stoppage. USACE's issuance and scope of the stop-work order were improper and unwarranted given the limited nature of the cited concerns, and USACE's subsequent contention that the order created concurrent delay was likewise improper.

34. The government delayed progression of the CMU wall work during this period by limiting which housing units could proceed and imposing maximum wall-elevation restrictions

while the underlying bent-plate design issue remained unresolved. The scope and duration of the stop-work order were disproportionate to the cited workmanship concerns and improperly prevented DBLLC from mitigating the continuing design-related disruption.

35. Before the stop-work order, DBLLC had constructed the same CMU wall system and performed the same CMU wall work on earlier housing units, including Housing Units #1 through #15, without USACE presenting any deficiencies or issuing any stop-work order. The local USACE staff had expressed no concerns regarding that work, and USACE had accepted similar work on those earlier units. USACE later confirmed that the CMU work demonstrated on Housing Units #16 and #26 was satisfactory and used that work as the workmanship standard for resumed construction.

36. On July 11, 2024, the government lifted the stop-work order and notified DBLLC that bent plates were no longer required.

37. Once USACE lifted the stop-work order on July 11, 2024, no repair or rework of the CMU walls remained to be performed in response to the cited workmanship concerns. Only minor corrections equivalent to punch-list items remained, and those corrections were addressed without tearing down or replacing the masonry.

38. On August 1, 2024, USACE issued letter AFHC-C-0094 formally eliminating bent plates from the design, directing DBLLC to proceed with CMU wall construction without bent plates, adding a new requirement to grout the bond beam to the ceiling, and providing revised drawings.

39. On August 13, 2024, USACE issued RFP-0008/DS025, formally removing bent plates from the contract drawings. The revised design not only eliminated bent plates but also

imposed a new bond-beam grout-to-ceiling requirement—a construction requirement not contemplated by the original Contract.

40. The total resolution period from DBLLC's submission of RFI-0058 (September 10, 2023) to the government's issuance of revised drawings (August 1, 2024) was approximately 327 calendar days. Throughout that period, DBLLC continued taking reasonable steps toward performance, including investigating constructability issues, coordinating with suppliers, submitting RFIs and other project deliverables, proposing alternative solutions, and preparing for procurement, fabrication, and construction. The government's response time and unresolved design direction affected the point at which those efforts could responsibly progress into committed procurement, fabrication, and construction. During this period, the government failed in its implied duty to cooperate by: (a) taking 46 days to respond to the initial RFI; (b) dismissing a significant design discrepancy across 11 drawing sheets as a typographical error; (c) failing to provide corrective drawings for nearly a year; and (d) imposing a stop-work order without concurrently resolving the underlying design defects.

**C. Claim 0003: Bent-Plate Delay Damages**

41. On or about July 21, 2025, DBLLC submitted Claim 003 as a formal certified claim under FAR 52.233-1, seeking $2,142,867.11 in delay damages and a 265-calendar-day time extension for delays attributable to USACE's defective bent-plate design, its delayed and inadequate responses to DBLLC's RFIs and proposed solutions, its stop-work order on CMU walls, and the resulting amendments to the Contract drawings.

42. Claim 003 concerns the disruption period through the July 11, 2024, lift of the stop-work order, including the process of identifying and resolving the bent-plate design defect and the resulting disruption to CMU wall work.[1]

**D. Claim 0004: Delays in Completing CMU Walls Under Revised Design**

43. On July 23, 2025, DBLLC submitted Claim 004 as a formal certified claim under FAR 52.233-1, seeking $501,350.04 and a 62-calendar-day time extension for delay damages associated with completing CMU walls after USACE issued revised construction details. Claim 004 addresses the additional delay and costs incurred when DBLLC had to return to partially completed CMU walls and complete them under USACE's revised construction details. This implementation period is distinct from the earlier design-resolution and stop-work period addressed in Claim 003.

44. Claim 004 is based on Time Impact Analysis No. 3 ("TIA #3"), which added a schedule fragmentary network (fragnet) for comeback work required to finish CMU walls under the revised USACE drawings. TIA #3 demonstrates that this implementation work impacted the project's critical path by 62 calendar days and extended the project completion date from June 24, 2025, to August 25, 2025. The work included returning to partially completed housing units, completing the remaining CMU wall and top-mortar activities, and performing the new bond-beam grout-to-ceiling work required by the revised design.

45. Claim 004 identifies 37 sequential activities for comeback work on CMU walls across multiple housing units, including remobilization of labor, equipment, materials, and related site operations. These activities followed the earlier disruption addressed in Claim 003. Claim 004

[1] The parties are currently negotiating 75 days of delay in Claim 003. Should the parties reach agreement, DBLLC will amend this Complaint to remove those days.

seeks indirect-cost damages, including field-office overhead and home-office overhead, for the 62-day critical-path extension.

**E. Consolidated Treatment of Claims 0003 and 0004**

46. Although DBLLC submitted Claims 0003 and 0004 as separate certified claims, the government later addressed them together because it viewed them as significantly overlapping. In fact, the claims are sequential and distinct: Claim 003 concerns the earlier disruption caused by the bent-plate design-resolution process and stop-work order, while Claim 004 concerns the later implementation and comeback work required to complete the CMU walls under the revised design. The claims therefore involve different periods, causation, and work, and are not duplicative.

47. The government has already conceded partial merit. In its March 20, 2026, interim determination, the government stated: "Additional Work/Rework (75 days) as per Claim 004: This period of time is deemed an excusable and compensable delay as it encompasses additional work beyond the contract's original plan and scope." The same determination recognized 22 calendar days for the period awaiting a revised detail, for a total of 97 calendar days of excusable and compensable delay. To date, the Government has not issued a contract modification for the 97 calendar days of delay nor has DBLLC been compensated for the costs associated with these delay days.

48. On June 19, 2026, DBLLC submitted a revised consolidated proposal reflecting 232 days and $2,450,386.87 for Claim 0003 and 62 days and $654,844.76 for Claim 0004, for a combined 294 days and $3,105,231.63. The proposal revised the pricing data while retaining the underlying day calculations.[2]

[2] The COFD's segmented treatment is not consistent with DBLLC's calculation of the actual delay days reflected in that proposal, and the COFD did not explain the discrepancy.

**CONTRACTING OFFICER'S FINAL DECISIONS**

49. Under the CDA, 41 U.S.C. § 7103(a), a contractor claim must be submitted in writing to the contracting officer. Claims exceeding $100,000 must be certified by the contractor as required by 41 U.S.C. § 7103(b) and FAR 52.233-1.

50. Each of DBLLC's claims was submitted in writing, sought payment as a matter of right in a sum certain, and was certified as required by 41 U.S.C. § 7103(b). The Contracting Officer issued written final decisions on each claim.

51. DBLLC submitted amended Claim 002 on June 19, 2025, seeking $1,309,979.14 in delay damages. The claim was certified as required by the CDA. On September 18, 2025, the Contracting Officer issued a written Final Decision denying Claim 002 (the "Claim 0002 COFD"). The COFD denied Claim 002 primarily on release grounds tied to Modification A00014.

52. DBLLC submitted Claim 003 on or about July 21, 2025, seeking $2,142,867.11 and a 265-calendar-day time extension. DBLLC submitted Claim 004 on July 23, 2025, seeking $501,350.04 and a 62-calendar-day time extension. Both claims were certified as required by the CDA.

53. The government's March 20, 2026, interim determination on Claims 003 and 004 found partial merit, recognizing 22 calendar days for awaiting revised detail from the Government, and 75 calendar days for additional work/rework—97 calendar days in total—as excusable and compensable government delay, while denying substantial portions of the claimed time extension and damages.

54. On July 8, 2026, the government issued letter AFHC-C-0244, constituting the Contracting Officer's Final Decision on Claims 0003 and 0004 (the "Claims 0003/0004 COFD").

55. On July 2, 2026, DBLLC had transmitted a request for clarification regarding whether letter AFHC-C-0244 constituted a formal COFD. By letter dated July 15, 2026 (AFHC-

C-0251), the government acknowledged DBLLC's request and confirmed that letter AFHC-C-0244 dated July 8, 2026, constituted the formal Contracting Officer's Final Decision for Claims 0003 and 0004. Notably, the COFD did not provide a competing schedule analysis or otherwise rebut DBLLC's schedule analysis supporting DBLLC's claim.

56. Under 41 U.S.C. § 7104(b)(1), a contractor may bring an action on a claim in the United States Court of Federal Claims within twelve months from the date of receipt of a contracting officer's decision. This Complaint is filed within twelve months of each COFD and is therefore timely as to all claims.

## COUNT I

### Breach of Contract

57. DBLLC incorporates by reference the allegations in paragraphs 1 through 56 above as though fully set forth herein.

58. As set forth in Claim 0002, the government breached the express terms of the Contract, including the Changes clause (FAR 52.243-4), by directing changes to the window and door thermal-performance specifications, causing 169 days of delay to DBLLC's performance, and then refusing to provide an equitable adjustment for the resulting delay damages. The government's revisions to the U-factor specification, extended review of DBLLC's submittals, and ultimate grant of a variance constituted a change to the Contract for which compensation is required under FAR 52.243-4.

59. As set forth in Claims 0003 and 0004, the government breached the express terms of the Contract, including the Changes clause (FAR 52.243-4) and the Suspension of Work clause (FAR 52.242-14), by: (a) furnishing defective and internally inconsistent drawings for the CMU wall bent-plate connection; (b) directing DBLLC to proceed with a design the government knew to be flawed; (c) issuing a stop-work order on CMU wall construction; (d) taking approximately

327 days to resolve the design deficiency and issue corrective drawings; (e) directing DBLLC to construct CMU walls under a revised design that imposed new requirements not in the original Contract, including the bond-beam grout-to-ceiling requirement; and (f) refusing to provide a full equitable adjustment for the resulting delays and increased costs.

60. The government breached its implied duty of good faith and fair dealing by, among other things: (a) furnishing design specifications it knew or should have known were defective; (b) taking unreasonable periods to respond to RFIs identifying specification defects; (c) dismissing significant design discrepancies as typographical errors rather than subsequently acknowledging and resolving them but failing to compensate DBLLC; (d) issuing stop-work orders that were improper and unwarranted given the minor nature of the cited workmanship issues, and then contending that those orders created concurrent delay; and (e) seeking to avoid payment of compensation for government-caused delay by characterizing excusable delay as non-compensable through improper application of the Default Clause. In each case, the government's actions and inactions interfered with DBLLC's performance and/or acted to destroy the reasonable expectations of DBLLC regarding the fruits of the contract.

61. The government breached its implied duty to cooperate and not to hinder DBLLC's performance by: (a) taking 46 days to respond to RFI-0058 and then providing an inadequate response; (b) failing to resolve the bent-plate design defect for approximately 327 days while DBLLC's CMU wall work was disrupted; (c) controlling CMU wall progression by limiting which housing units could proceed and imposing maximum wall elevation restrictions pending its resolution of the issue; and (d) issuing conflicting directives regarding bent-plate procurement and installation. In each case, the government's conduct was unreasonable, or the government wrongfully failed or refused to take an action essential to DBLLC's performance.

62. The government breached the implied warranty of specification adequacy by furnishing defective design specifications for both the window/door thermal-performance requirements and the CMU wall bent-plate connection. Specifically, the government breached its duty as follows:

a. With respect to Claim 0002, the combined thermal-performance (U-factor) and impact-resistance requirements made commercially available compliant windows impossible or impracticable to obtain, constituting a classic defective specification. The government's own acknowledgment of the defect—through the variance, RFP-0002 revision, and ACO schedule-impact determination—confirms that satisfactory performance could not result from adherence to the specifications as written.

b. With respect to Claims 0003 and 0004, the government's drawings contained internal inconsistencies across 11 sheets regarding the bent-plate connection detail and exterior wall finish assembly. These inconsistencies rendered the drawings defective because a contractor could not simultaneously comply with all specified requirements. The government's ultimate elimination of bent plates entirely—with acknowledgment that costs would be borne by the government—confirms the defective nature of the original specification.

63. The government's actions with respect to all three claims constituted constructive changes to the Contract. The government's specification revisions, extended review processes, directed redesign of the CMU wall system, issuance of revised drawings imposing new requirements, and other informal directives effectively altered the contract requirements and increased the cost and time of performance without formal change orders providing equitable adjustments.

64. With respect to Claims 0003 and 0004, the government's issuance of a stop-work order on CMU wall construction from approximately May 22, 2024, to July 11, 2024, constituted an unreasonable suspension of work within the meaning of FAR 52.242-14.

65. As a direct and proximate result of the government's breaches described above, DBLLC has suffered damages including, but not limited to, extended field-office overhead, home-office overhead, and other delay-related costs in amounts to be proven at trial, but not less than: $1,309,979.14 for Claim 0002; $2,450,386.87 for Claim 0003; and $654,844.76 for Claim 0004.

## **PRAYER FOR RELIEF**

WHEREFORE, for the reasons stated herein, Plaintiff Design Build, LLC respectfully requests that this Court enter judgment in its favor and against the United States as follows:

a. Awarding DBLLC monetary damages in amounts to be proven at trial, including but not limited to:

i. Not less than $1,309,979.14 for Claim 0002 (Window and Door Specification Changes Delay Damages);

ii. Not less than $2,450,386.87 for Claim 0003 (Bent-Plate Delay Damages);

iii. Not less than $654,844.76 for Claim 0004 (Delays in Completing CMU Walls);

iv. such other amount as proven at trial.

b. Awarding DBLLC interest under 41 U.S.C. § 7109 on all amounts found due, accruing from the date the Contracting Officer received each respective claim until payment;

c. Awarding DBLLC its costs of this action to the extent recoverable by law;

d. Granting such other and further relief as this Court deems just and equitable.

Dated: September 15, 2026

Respectfully submitted,

*/s/ Brandon K. Regan*______________

Brandon K. Regan, Esq.
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1000
Email: bregan@watttieder.com

*Attorney of Record for Plaintiff Design Build, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2026, I caused a copy of the Complaint to be served on all parties via the Court's electronic case filing system, NextGen CM/ECF.

*/s/ Brandon K. Regan*______
Brandon K. Regan, Esq.